## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSÉ R. MERCED RIVERA

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 21-1613 (MEL)

### OPINION AND ORDER

## I.    Procedural and Factual Background

Pending before the court is Mr. José Merced Rivera's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 15. On August 18, 2011, Plaintiff filed an application for Social Security benefits alleging that he initially became unable to work due to disability on February 28, 2008 ("the onset date"). Tr. 14. Prior to the onset date, Plaintiff worked as a "Welder." Tr. 27. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. Tr. 16, 606. Plaintiff's disability claim was denied on February 29, 2012 and upon subsequent reconsideration. Tr. 14. Thereafter, Plaintiff requested a hearing which was held on July 30, 2013 before an Administrative Law Judge ("the ALJ"). Tr. 14. On August 22, 2013, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 29. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review. Tr. 1–3.

Subsequently, on December 23, 2014 Plaintiff filed a complaint in the United States District Court for the District of Puerto Rico challenging the ALJ's decision issued on August

22, 2013. Tr. 813–14. On May 28, 2015, the Commissioner filed a "Motion for Remand"

requesting that the Plaintiff's case be remanded for further administrative proceedings. Tr. 817–

18. Specifically, the Commissioner represented to the court that,

> Remand is necessary in this case because the ALJ failed to fully develop the record
> with respect to Plaintiff's mental impairment, as he was required to do. Carrillo
> Marin v. Sec'y Health & Human Serv., 758 F.2d 14, 17 (1st Cir. 1985). (The ALJ
> had a duty to "develop an adequate record from which a reasonable conclusion can
> be drawn."). Specifically, the transcript included no records from Plaintiff's mental
> health providers—psychiatrist Dr. Juan Soto Silva and APS [Clinics of Puerto
> Rico,] San Juan—or any indication that the ALJ, or the agency, attempted to obtain
> them. . . . This error was not harmless. The ALJ relied on Plaintiff's apparent lack
> of mental health treatment in concluding that he did not have a severe mental
> impairment[.]

Tr. 818. Pursuant to the Commissioner's motion to remand, the court ordered on May 28, 2015

that the case be dismissed without prejudice and remanded for further proceedings. Tr. 814, 816.

Upon remand on April 6, 2020, the ALJ held a telephone hearing "due to the

extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic"

in which Plaintiff appeared and was represented by counsel. Tr. 603, 735. On April 29, 2020, the

ALJ issued a written decision again finding that Plaintiff was not disabled. Tr. 617. After review

of the ALJ's decision, the Appeals Council declined to assume jurisdiction, rendering the ALJ's

decision the final decision of the Commissioner, subject to judicial review. Tr. 589–92. Plaintiff

filed a complaint on December 17, 2021 challenging the ALJ's April 29, 2020 decision. ECF No.

3. The Commissioner opposed Plaintiff's challenge, and both parties have filed supporting

memoranda. ECF Nos. 15, 16.

## II.    Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for

disability benefits, a district court "shall have power to enter, upon the pleadings and transcript

of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine

issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

4

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the ALJ's April 29, 2020 decision following the remand of Plaintiff's case, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2012. Tr. 606. At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of February 28, 2008 through the date last insured. Tr. 606. At step two, the ALJ determined that Plaintiff had the following severe impairments: "disorders of the spine, lumbar degenerative disc disease, right ankle ligament tear, status post-surgical reconstruction, obesity, and depressive disorder." Tr. 606. At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 607. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a), except that he could lift, carry, push and pull 10 pounds occasionally and less than 10 pounds frequently. He could sit for 6 hours in an 8-hour workday alternating to standing for 3 minutes after every 1 hour of sitting; stand for 2 hours in an 8-hour workday and walking for 2 hours in an 8-hour workday alternating to sitting for 3 minutes after every 30 minutes of walking. He could occasionally climb ramps and stairs, balance and stoop. Yet he can never climb scaffolds and ladders, kneeling, crouching and crawling. Furthermore, he can never be exposed to unprotected height and could only occasionally work operating a motor vehicle. He could frequently operate foot controls with the right foot. Mentally he was limited to simple, routine and repetitive task [sic] while making simple work related decisions.

Tr. 609. At step four, the ALJ determined that during the relevant period, Plaintiff was unable to perform his past relevant work as a "Welder." Tr. 615. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. Tr. 616. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: document preparer, lens inserter, and order clerk. Tr. 616–17. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled. Tr. 617.

## III.   Legal Analysis

Plaintiff objects to the ALJ's denial of disability benefits after remand on two grounds: (1) That at step 3 the ALJ erred in finding that Plaintiff did not qualify for a listed impairment, and (2) that the ALJ's RFC determination was not supported by substantial evidence. Because the Plaintiff's arguments are unavailing, as explained below, the Commissioner's decision is affirmed.

## A.  The ALJ's Step Three Determination

Plaintiff asserts that the ALJ erred at step three by concluding that Plaintiff did not suffer from a listed impairment. ECF No. 15 at 10–11, 18. At step three, the claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d); Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) ("[t]he burden to demonstrate the existence of such a [listed] impairment rests with the claimant."). To meet the criteria of a listing, the claimant's impairment must satisfy all the duration and objective medical requirements. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. § 404.1525(c)(3).

### 1.  Listed Impairment 1.04

Plaintiff first argues that the ALJ erred in concluding that Plaintiff's spine condition did not meet the criteria of listing 1.04 because medical evidence shows that Plaintiff suffered from "stenosis." ECF No. 15 at 10–11. The Commissioner responds to Plaintiff's arguments by noting that the mere presence of stenosis is not adequate to meet the criteria of listing 1.04. ECF No. 16 at 13. Listing 1.04 concerns disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.04. In order for an ALJ to find that the Plaintiff suffers from listed impairment 1.04, the Plaintiff bears the burden of demonstrating first that he suffers from a disorder such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture" and that the disorder satisfies either the paragraph A, B, or C criteria under listing 1.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.04A, 1.04B,

1.04C. Paragraph C regarding lumbar spinal stenosis, the provision at issue in Plaintiff's challenge, provides that a plaintiff must show that he suffers from "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.04C.

In this case the ALJ concluded that Plaintiff "had a long history of disorders of the spine for which he has been treated" and recognized that the Plaintiff complained of "severe and disabling pain." Tr. 608. However, the ALJ concluded that the objective evidence in the record suggested that Plaintiff only suffered a "moderate musculoskeletal condition" which did not meet the criteria of listing 1.04. Tr. 608. The ALJ cited the findings and impression of radiologist Dr. Maruja Santiago ("Dr. Santiago") and radiologist Dr. Daniel Del Prado ("Dr. Del Prado") following Plaintiff's non contrast lumbar spine MRI conducted on June 6, 2012. Tr. 571. Doctors Santiago and Del Prado stated on several occasions in the findings that in the various portions of Plaintiff's spine they found no evidence of canal stenosis, "no significant canal stenosis", and only "minimal narrowing of the central canal." Tr. 571. In their impressions they concluded that Plaintiff suffered from "mild degenerative circumferential disk bulges at L3-L4 and L4-L5, not causing significant canal stenosis or foraminal compromise." Tr. 571.

Even so, Plaintiff argues that the ALJ's conclusion regarding Plaintiff's stenosis is in error and cites medical records which predated Plaintiff's MRI of June 6, 2012. ECF No. 15 at 11. However, the ALJ's conclusion is not evidently in error even upon examination of the evidence which Plaintiff cites. ECF No. 15 at 11. For example, Plaintiff cites the radiology reading of Dr. Félix Aponte La Luz ("Dr. Aponte La Luz") from March 21, 2011 which

concluded that Plaintiff suffered "[c]hronic narrowing at L5-S1 intervertebral space" and "slight chronic wedging deformity at L1 vertebra." Tr. 547. Dr. Aponte La Luz's findings of chronic narrowing does not undermine the ALJ's reliance on Doctors Santiago and Del Prado who later found in June of 2012 that Plaintiff's stenosis was not "significant." Tr. 571. More importantly, even if the ALJ erred in determining that Plaintiff did not suffer from significant stenosis, Plaintiff does not argue nor cite to any evidence in the record which even suggests that his stenosis caused any difficulties in his ability "ambulate effectively."[1] Without a showing that his stenosis caused an inability to walk, Plaintiff's stenosis does not fulfill the criteria of 1.04 paragraph C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.04C. As such, the ALJ's conclusion regarding Plaintiff's qualifications for listing 1.04 was not in error and was supported by substantial evidence.

### 2. Listed Impairment 12.04

Plaintiff also argues that the ALJ committed legal error because she did not analyze Plaintiff's mental affective disorders in accordance with the criteria of Listing 12.04 in place at the time the Plaintiff's case was "submitted." ECF No. 15 at 18. Plaintiff asserts that the ALJ should have applied the version of listing 12.04 which was in place from 2008 to 2016 because the Plaintiff's case was "submitted" in 2008. ECF No. 15 at 18. Plaintiff's argument cannot prosper.

First, Plaintiff's factual contention as to the date his case was "submitted" is incorrect. Indeed, it is unclear to which date Plaintiff refers when he states that Plaintiff's case was

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A1, § 1.00B2b establishes that "[i]nability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

"submitted in 2008." ECF No. 15 at 18. If Plaintiff means that his case was "submitted" for the

ALJ's consideration, that event did not occur until April 6, 2020 when the Plaintiff's attorney

represented to the ALJ that the case was "submitted" for the ALJ's consideration. Tr. 776.

Moreover, there was no difference in the versions of Listing 12.04 between the date the case was

submitted for the ALJ's consideration on April 6, 2020 and the date of the ALJ's decision nine

days later on April 29, 2020. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04 (effective

from March 14, 2018 to April 1, 2021). If, however, Plaintiff intends "submitted" to mean the

date that Plaintiff filed an application for a period of disability and disability benefits, he is also

factually incorrect. Plaintiff alleges his disability had an onset date of February 2008. Tr. 14,

608. However, Plaintiff did not file his Social Security application in 2008, but rather filed it

over three years later on August 18, 2011. Tr. 14.

Second, regardless of what Plaintiff means by "submitted," as a matter of law Plaintiff's

legal argument cannot prosper because the ALJ correctly applied the version of Listing 12.04

which was in effect on April 29, 2020—the date of her decision. In exercising judicial review of

decisions by the Commissioner of Social Security, for listed impairments courts repeatedly

affirm that "[t]he version of the Listings in effect as of the date of the ALJ's decision controls."

Brown v. Berryhill, 2017 WL 4638222, at *6 n. 11 (D. Me. Oct. 15, 2017); Berke v. Saul, 2020

WL 6827792, at *9 n. 5 (N.D. Iowa Nov. 20, 2020) ("The version of the listing in effect at the

time the ALJ rendered her decision governs the case."); Bernal v. Berryhill, 2018 WL 2441154,

at *2 n. 5 (D.N.M. May 31, 2018) ("The relevant regulations and listings are the ones in effect on

. . . the date of the ALJ's determination."); see also Marcou v. Berryhill, 2017 WL 4118961, at *6

n. 5 (D. Me. Sept. 17, 2017), report and recommendation adopted, 2017 WL 4411034 (D. Me.

Oct. 4, 2017); Page v. Berryhill, 2017 WL 5153401, at *2 n. 2 (D. Me. Nov. 7, 2017), report and

recommendation adopted, 2017 WL 6045424 (D. Me. Dec. 6, 2017) ("The version of the Listing in effect on the date of the ALJ's decision governs."). In so concluding, courts have cited the Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 (Sept. 26, 2016) which provides that "[w]hen the final rules become effective, [the ALJ] will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date." The Revised Medical Criteria for Evaluating Mental Disorders also clarifies that "[the Commissioner] expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n. 1 (Sept. 26, 2016). Accordingly, upon judicial review of a listed impairment, the court must "review the Commissioner's final decision using the version applied by the ALJ, which is the version in effect 'at the time [the Commissioner] issued the decisions.'" David O. v. Berryhill, 2019 WL 2501884, at *10 n. 14 (D.R.I. Feb. 13, 2019) (citing Dames v. Comm'r of Soc. Sec., 743 F. App'x 370, 372 (11th Cir. 2018)). Because the ALJ applied the version of Listing 12.04 which was in effect on the date of her decision, as explained below, the  ALJ committed no legal error. Tr. 608–09.

Furthermore, Listing 12.04 changed significantly between 2008 and 2020. The version of Listing 12.04 which was in effect in 2008, and which Plaintiff cites, concerns "Affective Disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04 (effective from June 16, 2007 to February 1, 2009). In contrast, the version of Listing 12.04 which was effective in April 2020 concerns "[d]epressive, bipolar and related disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part

A2, § 12.04 (effective from March 14, 2018 to April 1, 2021). Both versions contain paragraph A, B, and C criteria. However, under the 2008 version of Listing 12.04, a Plaintiff meets the requirements of Listing 12.04 upon showing that the requirements of both Paragraph A and B are satisfied, *or* when the requirements of only Paragraph C are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04 (effective from March 14, 2018 to April 1, 2021). Namely, to meet Paragraph A, a claimant needed to show a "depressive syndrome," "manic syndrome," or "bipolar syndrome" and those conditions must have resulted in at least two of the following Paragraph B criteria: (1) "Marked restriction of activities of daily living;" (2) "Marked difficulties in maintaining social functioning;" (3) "Marked difficulties in maintaining concentration, persistence, or pace;" or (4) "Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04A–12.04B (effective from June 16, 2007 to February 1, 2009). Alternatively, under the 2008 version of Listing 12.04, a claimant could independently qualify for a listed impairment if he met the criteria under paragraph C, showing a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration" causing more than a "minimal limitation" in the claimant's ability to do basic work combined with one of the three following criteria: (1) "Repeated episodes of decompensation, each of extended duration"; (2) "A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate"; or (3) "Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04C (effective from June 16, 2007 to February 1, 2009).

In contrast, under the version of Listing 12.04 in effect at the time of the ALJ's decision in April 2020 a claimant had to show different Paragraph A criteria first, then had to show the existence of the criteria under either paragraph B or paragraph C. In April 2020, Paragraph A required that Plaintiff show medical documentation of a depressive disorder or bipolar disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04 (effective from March 14, 2018 to April 1, 2021). Paragraph B required that Plaintiff demonstrate a set of criteria distinct from the criteria of the 2008 version of listing 12.04, namely an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": (1) Understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B (effective from March 14, 2018 to April 1, 2021). Alternatively, in the April 2020 version of Listing 12.04 Plaintiff could show the Paragraph C criteria in combination with the Paragraph A criteria, and which required a showing that the Plaintiff's condition is "serious and persistent," meaning that he has a documented history of treatment of the disorder for at least two years and that he both (1) undergoes ongoing medical treatment or mental health therapy that diminishes the "symptoms and signs" of his mental disorder, and (2) has "marginal adjustment," meaning a minimal capacity to adapt to changes or demands in his environment which are not part of his daily life. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04C (effective from March 14, 2018 to April 1, 2021).

Accordingly, the requirements of Listing 12.04 in 2008 were very different from those which were in effect at the time of the ALJ's decision in April 2020. The ALJ's decision assessed the criteria present in Listing 12.04 in the version applicable in April 2020, for example, by assessing the Paragraph B criteria as to whether Plaintiff suffered any limitations in (1)

understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing himself. Tr. 608–09. Furthermore, the ALJ stated that she "also considered whether the "paragraph C" criteria were satisfied" and concluded that "[i]n this case, the evidence fails to establish the presence of the "paragraph C" criteria. Tr. 609. Therefore, Plaintiff's argument is untenable, and the ALJ committed no legal error in applying the version of Listing 12.04 which was in effect on the date of her decision on April 29, 2020.

Plaintiff nevertheless makes conclusory allegations that the ALJ did not correctly assess the Paragraph B or Paragraph C criteria of the 2008 version of Listing 12.04 and does not specify or cite any evidence in the record to indicate how exactly the ALJ was in error. ECF No. 15 at 20. Plaintiff is correct that the ALJ did not assess the criteria of the 2008 version of Listing 12.04, because the ALJ applied the version of listing 12.04 from April 2020. Given the large discrepancy between the version of Listing 12.04 in 2008 and 2020, the ALJ's analysis was much different than that erroneously demanded by the Plaintiff. Because Plaintiff's contention is both conclusory and based on an erroneous legal standard, no further analysis is warranted.

## B. The ALJ's RFC Determination

### 1. Physical RFC

Plaintiff next argues that the ALJ erred in formulating Plaintiff's physical RFC when she concluded that Plaintiff "could frequently operate foot controls with the right foot." ECF No. 15 at 11–12; Tr. 609. At Plaintiff's hearing on remand on April 6, 2020, Dr. Francisco Joglar ("Dr. Joglar") testified as a medical expert. Tr. 735. During his testimony, the ALJ asked Dr. Joglar whether "the record reflect[s] any limitations in the use of the feet, controlling the feet?" Tr. 767. Dr. Joglar replied that the record did not "specifically classify the limitation, but

it's reasonable to think that there would be limitations in the use of the right foot, especially with the flexion of that foot. That would be occasional." Tr. 767. The ALJ's decision gave Dr. Joglar's opinion "great weight, because it is consistent with the clinical signs and the medical evidence supports it" and the decision noted Dr. Joglar's opinion that Plaintiff "could frequently operate foot controls with the right foot." Tr. 611. Plaintiff argues, however, that the ALJ erred in this determination because Dr. Joglar did not testify that Plaintiff could operate foot controls with his right foot "frequently" but instead testified that Plaintiff would be limited "occasionally" in the use of his right foot. ECF No. 15 at 12. Plaintiff's argument is misplaced.

Social Security Rule (SSR) 83-10 defines "Occasionally" for the purpose of exertional levels as "occurring from very little up to one-third of the time." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *5 (S.S.A. 1983). Conversely, SSR 83-10 defines "Frequent" as "occurring from one-third to two-thirds of the time." Id. at *6. Accordingly, when Dr. Joglar opined that Plaintiff suffers occasional limitations in the use of his right foot, for purposes of exertional levels Dr. Joglar was expressing that Plaintiff was limited very little up to one-third of the time in the use of his right foot. If Plaintiff was occasionally limited in his right foot up to one-third of the time, that means that he could use his right foot at least two thirds of the time—in other words, frequently. Therefore, Dr. Joglar's expression that Plaintiff was limited in the use of his right foot occasionally is the equivalent of saying that Plaintiff could use his right foot frequently. As such, it was accurate for the ALJ to express the converse of Dr. Joglar's opinion in her decision, finding that Plaintiff "could frequently operate foot controls with the right foot." Tr. 609. The ALJ therefore committed no error in her decision relying on the opinion of Dr. Joglar to determine Plaintiff's limitations in his right foot.

Additionally, even when an ALJ errs, the court will not reverse the error if it was "harmless," meaning that the ALJ's error would not have been outcome determinative. See Colón v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing Pérez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)). In this case, when the vocational expert at the remand hearing testified regarding jobs available in the national economy which Plaintiff could perform, he opined that Plaintiff was capable of performing work at the sedentary level and offered three examples of such positions: document preparer, lens inserter, and order clerk. Tr. 616–17, 774. Plaintiff's attorney then asked the vocational expert whether those jobs at the sedentary level required the use of the right foot either occasionally, frequently, or constantly. Tr. 774. The vocational expert replied that those jobs did not require the use of the feet at all in order to perform them. Tr. 774. Therefore, even if the ALJ had erred in assessing Plaintiff's capacity to use his right foot frequently, the representative occupations which were available to Plaintiff in the national economy did not require him to use his feet at all. As such, any error by the ALJ would have been harmless as it would not have impacted the outcome of the ALJ's decision that the Plaintiff's RFC allowed him to engage in work which was available in the national economy.

### 2.  Mental RFC

Regarding Plaintiff's mental RFC determination, Plaintiff first takes issue with the ALJ's efforts to seek the medical records which occasioned the remand in this case. ECF No. 15 at 14–15. As previously mentioned, following the initial decision by the ALJ in August 22, 2013, the Commissioner filed a motion requesting that the Plaintiff's case be remanded for further administrative proceedings which was granted by the court. Tr. 817–18. Specifically, the Commissioner represented that:

> Remand is necessary in this case because the ALJ failed to fully develop the record
> with respect to Plaintiff's mental impairment, as he was required to do. . . .
> Specifically, the transcript included no records from Plaintiff's mental health
> providers—psychiatrist Dr. Juan Soto Silva [("Dr. Soto Silva")] and APS San
> Juan—or any indication that the ALJ, or the agency, attempted to obtain them.

Tr. 818. See ECF No. 16 at 19. Accordingly, in the Order of the Appeals Council remanding the

case to an ALJ, the Appeals council ordered the ALJ to "[a]ttempt to obtain the evidence from

the providers noted above in order to complete the administrative record" and to "[r]eevaluate

the nature and severity of the claimant's mental impairments consistent with 20 CFR 404.1520,

and articulate the reasoning regarding this impairment in the hearing decision." Tr. 825.

Plaintiff's argument, while not pellucidly clear, implies that the ALJ's efforts in obtaining and

analyzing Plaintiff's mental health records were insufficient because the ALJ "only issued one

subpoena to Dr. Soto-Silva" and because the APS evidence was "from 2016, outside of the

period" of Plaintiff's date last insured. ECF No. 15 at 14–15.

It is a plaintiff's burden to prove that he is disabled within the meaning of the Social

Security Act, and as such "it is not unreasonable to require the claimant, who is in a better

position to provide information about his own medical condition to do so." See Bowen, 482 U.S.

at 146 n.5, 146–47. As such, the ALJ "will first ask the individual or representative to submit

evidence." Soc. Sec. Ruling, SSR 17-4p; Titles II & XVI: Resp. for Developing Written

Evidence, SSR 17-4P, at 2017 WL 4736894 *6 (S.S.A. Oct. 4, 2017). If a claimant or their

representative "shows that he or she is unable to obtain the evidence despite good faith efforts or

for reasons beyond his or her control, [the ALJ] may request the evidence directly from the

medical source or entity that maintains the evidence." Id.

An ALJ may need to take further actions if the case record for a claimant is "insufficient"

in order to develop an adequate record from which the ALJ may draw a reasonable conclusion.

20 C.F.R. § 404.1520b(b); <u>Carrillo Marin v. Sec'y of Health & Hum. Servs.</u>, 758 F.2d 14, 17 (1st Cir. 1985). Specifically, 20 C.F.R. § 404.1520b(b)(2) provides that the ALJ "will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section." The four paragraphs of (b)(2)(i) through (b)(2)(iv) set forth that the ALJ (1) "may recontact [the claimant's] medical source" but also "may choose not to seek additional evidence or clarification from a medical source if [the ALJ] know[s] from experience that the source either cannot or will not provide the necessary evidence"; (2) the ALJ "may request additional existing evidence"; (3) the ALJ may "ask [the claimant] to undergo a consultative examination" in accordance with 20 C.F.R. § 404.1517; (3) or the ALJ "may ask you or others for more information." 20 C.F.R. § 404.1520b(b)(2)(i)–(iv). When "despite efforts to obtain additional evidence, the evidence is insufficient to determine whether [the claimant is] disabled, [the ALJ] will make a determination or decision based on the evidence" that the ALJ has. 20 C.F.R. § 404.1520b(b)(3).

 In this case, the ALJ made a proper effort to obtain the medical evidence regarding Plaintiff's mental state that was the cause for the remand and used the available evidence to formulate a mental RFC determination which was supported by substantial evidence. In accordance with the directives of the Appeals Council on remand, the ALJ attempted to obtain the required evidence from the Plaintiff's providers in order to complete the administrative record with regard to Plaintiff's mental RFC. <u>See</u> Tr. 825. The ALJ issued four subpoenas following remand to four separate providers as ordered by the Appeals Council, including to Dr. Soto Silva and APS Clinics of Puerto Rico. Tr. 604, 945–57. At the hearing on April 20, 2020 the ALJ stated that a subpoena was issued and sent to Dr. Soto Silva to "the only address we had available for Dr. Soto Silva", but that the subpoena was "returned by postal mail." Tr.

743. Delivery of the subpoena was attempted to Dr. Soto Silva's address; however, the envelope

sent certified mail indicated that the address was unknown and the subpoena could not be

forwarded. Tr. 953. Plaintiff did not provide a corrected or current address for Dr. Soto Silva

during the hearing on April 6, 2020, and based on the failure to deliver the subpoena by mail, the

ALJ in her discretion could choose not to seek additional evidence or clarification from Dr. Soto

Silva. 20 C.F.R. § 404.1520b(b)(2)(i). The ALJ therefore committed no legal error when she

proceeded to the remaining evidence after having attempted to obtain evidence from Dr. Soto

Silva.

The ALJ successfully obtained further evidence from APS Clinics of Puerto Rico;

however, as noted by the ALJ, the progress notes obtained from APS pertains to treatment from

April 2016 through November 2019, at least three years and at most seven years after Plaintiff's

date last insured on December 31, 2012. She correctly concluded that such evidence is therefore

"not relevant to this claim." Tr. 615; Deblois v. Sec'y of Health & Hum. Servs., 686 F.2d 76 (1st

Cir. 1982) (stating that the plaintiff had the burden of establishing by credible evidence that he

had a disabling mental condition as of the date he was last qualified for disability coverage).[2]

Turning to the evidence underlying the ALJ's decision, at the hearing Dr. Amarilis

Serrano ("Dr. Serrano") testified as a medical expert and opined on Plaintiff's mental condition.

When the ALJ asked whether Dr. Serrano had "enough medical evidence to establish the severity

of a mental condition?", Dr. Serrano replied "In my opinion, I don't, Your honor." Tr. 767. In

her decision, the ALJ did not hide the fact that the record regarding Plaintiff's mental conditions

---

[2] Further of note, after a subpoena was issued and sent to San Juan Capestrano Hospital, it reported that "on review of our records, files and information system found no evidence" that Plaintiff "has been evaluated and treated at our institution." Tr. 948, 1132. However, the ALJ recognized that "[a] discharge summary from San Juan Capestrano Hospital dated in February 20, 2002 suggests [Plaintiff] was hospitalized for Alcohol Dependance NOS", but provided no citation to the record. Tr. 613.

was sparse and noted that the "evidence was scarce[.]" Tr. 614. However, as already mentioned,
the ALJ was not required to continue to pursue evidence or clarification where experience shows
that the source could not or would not provide the evidence. 20 C.F.R. § 404.1520b(b)(2)(i).
With regard to requesting additional evidence or asking the Plaintiff or others for more
information under 20 C.F.R. § 404.1520b(b)(2)(ii) and (iv), after having been explained by the
ALJ the efforts she took to obtain evidence from Plaintiff's mental health providers the Plaintiff
communicated at the end of the hearing on April 6, 2020 that the case was submitted and the
ALJ could proceed to her decision. Tr. 743, 776.

Finally, the ALJ did not need to order an additional consultative evaluation of Plaintiff
under 20 C.F.R. § 404.1520b(b)(2)(i) and 20 C.F.R. § 404.1517 because the ALJ cited the
consultative examination in the record of psychiatrist Dr. Ericka Rivera Castro ("Dr. Rivera
Castro") when determining Plaintiff's mental RFC. ECF No. 614.[3] Dr. Rivera Castro evaluated
Plaintiff on November 29, 2011 and reported that Plaintiff had a past history of depression and
had attempted suicide. Tr. 550. She also observed that Plaintiff had a depressed mood but was
oriented in all three spheres, and his immediate, recent, and remote memories were all intact but
could not complete the short term memory test. Tr. 550–52, 614. Dr. Rivera Castro also noted
that Plaintiff maintained attention and eye contact, was alert and cooperative, and that she was
easily able to establish a rapport with Plaintiff. Tr. 551–52, 614.

Despite the general scarcity of the evidence in the record even after the ALJ attempted to
obtain additional evidence regarding Plaintiff's mental condition, the ALJ properly made a

---

[3] The ALJ discussed at length how a criminal case had been brought against Dr. Rivera Castro for having submitted
"fraudulent evidence in connection with applications for benefits from the Social Security Administration." Tr. 614,
804. However, the ALJ stated that after considering "information from Dr. Rivera Castro's criminal case and the
information in [Plaintiff's] case file . . . [b]ased on a preponderance of the evidence, [the ALJ] find[s] no reason to
believe that fraud or similar fault was involved in providing the following evidence from Dr. Rivera Castro
(Consultative examination[).]" Tr. 614.

decision based on the evidence on the record in accordance with 20 C.F.R. § 404.1520b(b)(3). At the hearing, the ALJ further questioned Dr. Serrano who—despite asserting that she did not have enough evidence in the record to establish the severity of Plaintiff's mental condition— nevertheless analyzed the medical evidence in the record and provided an evaluation to the ALJ. Tr. 767–70. Eventually, the ALJ asked Dr. Serrano, "based on the record that you were evaluating, is it reasonable to expect that the claimant's memory or concentrations would've been affected at some point in that period of time that we're evaluating, due to the pain?" to which Dr. Serrano responded, "I believe so, Your Honor." Tr. 768. Dr. Serrano also concluded that during within the relevant period, the Plaintiff would have been limited to simple and routine tasks and making simple work related decisions. Tr. 614, 768. This finding was cited by the ALJ and incorporated into the Plaintiff's mental RFC determination. Tr. 609.

Plaintiff next takes issue with the ALJ's summary of progress notes from Plaintiff's psychiatric treatment in 2008. ECF No. 15 at 15. Plaintiff points out that contrary to the ALJ's statement that "[t]here was no evidence of suicidal or homicidal ideas", a psychiatric evaluation completed on September 27, 2008 by Dr. Ramón Fernández Marina ("Dr. Fernández Marina") at the Commonwealth of Puerto Rico Psychiatric Hospital reported that Plaintiff had "suicidal ideas" and had attempted to commit suicide a "few times" by "[s]litting his wrists and taking medication." Tr. 663, 667. However, the ALJ took this episode into account when evaluating Plaintiff the opinion of consultative evaluator Dr. Rivera Castro from November 2011. The ALJ noted Dr. Rivera Castro's report that Plaintiff had became "very depressed with suicidal ideas" while he was still working and that Plaintiff had attempted "cutting his veins." Tr. 614, 550. Furthermore, Dr. Serrano, to whom the ALJ gave great weight, referred to the psychiatric evaluation in 2008 by Dr. Fernández Marina during her testimony, noting Plaintiff's "suicidal

tendencies and major depression." Tr. 614–15, 768. Dr. Serrano stated that Plaintiff's

hospitalization in relation to this episode in 2008 occurred during the period of Plaintiff's

disability insurance coverage but that, nevertheless, it did not meet the durational requirement of

rendering Plaintiff unable to work for 12 months. Tr. 768; see Barnhart v. Walton, 535 U.S. 212,

218–19 (2002). Therefore, although it was inaccurate for the ALJ to state, with regard to

Dr. Fernández Marina's progress notes that "[t]here was no evidence of suicidal or homicidal

ideas", if such a misstatement was error, it was harmless because the ALJ's decision indicates

that she was aware and considered in her decision that Plaintiff had attempted to commit suicide.

Therefore, the ALJ considered Plaintiff's 2008 mental health hospitalization related to his

attempted suicide, mentioned it in Plaintiff's mental RFC, and then relied on the testimony of

medical expert Dr. Serrano to formulate the Plaintiff's mental RFC. Such a decision was

supported by substantial evidence, and even if "the record arguably could justify a different

conclusion" so long as the ALJ's decision is supported by substantial evidence, the court must

affirm. Rodríguez Pagán, 819 F.2d at 3.

　　　In sum, the ALJ properly attempted to obtain more evidence regarding Plaintiff's mental

condition as was required on remand. Although the ALJ's efforts to obtain additional evidence

may have been insufficient for medical expert Dr. Serrano to opine whether Plaintiff was

disabled due to a mental condition, the ALJ acted appropriately under Social Security regulations

to formulate Plaintiff's mental RFC based on the available evidence in the record, including the

evaluation of Dr. Rivera Castro, and in combination with the testimony of Dr. Serrano. As such,

the ALJ committed to error and her decision was supported by substantial evidence.

**IV.     Conclusion**

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence and contained no legal error. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of January, 2022.

<u>s/Marcos E. López</u>
U.S. Magistrate Judge